CHARLES J. SCHUCIC, Judge,
dissenting.
I cannot agree with the reasoning set forth in the majority opinion refusing an award, and I am therefore obliged to dissent.
While, of course, no appropriation by the Legislature can be made as a mere gratuity or on the sole ground of sympathy, but when the facts, carefully analyzed, show negligence and *105 carelessness on the part of those in charge of a state institution, then no question of mere gratuity is presented but rather the matter of doing justice in equity and good conscience as set forth in the act creating this court.
The testimony clearly shows that the machine in question was highly dangerous not only when it was being operated for the purpose for which it was constructed, namely taking care of and drying the washing of the laundry of the institution in question, but also, even after the work had been completed for which the machine was used and the electric current turned off it still continued to operate and was so dangerous that it amputated this boy’s arm when for some reason he put his arm into the machine. The very happening of the accident and its nature in my judgment, demonstrates conclusively that it was a dangerous instrumentality or machine used in carrying on the work of the istitution. No precaution had been taken to keep the children away from the machine or its operation as the evidence reveals. No protection in or about the machine had been constructed or built for the purpose of protecting the children of the institution and so far as the evidence reveals, it was only after this deplorable accident had happened that any precautionary measures whatever were taken by those in charge of the institution.
I challenge the statement that all ordinary precautions against danger were taken. A careful reading of the record, I repeat, discloses that no precautionary measures were taken, save only that, since the accident, rules and regulations have been formulated not to allow any of the boys in the laundry room who are not employed there in taking care of the cleaning and drying of the laundry. So far as the record reveals, no rules had been promulgated before the accident. In fact, every inference and deduction shows that no precautions against injury to the children had been taken previous to that time. If this was not negligence, considering all of the circumstances and facts, namely that it was a state institution where children of tender ages were confined without the proper discretionary power to discriminate between what was or might be dangerous or *106 machinery that might be harmless, then I fail to comprehend how or under what conditions negligence or lack of proper or ordinary care could ever be imputed to those in charge of a like insti'ution. As shown in the record (p. 40) the machine could have been operated when entirely enclosed and continued to operate, so far as the drying process is concerned when and if enclosed. In view of these facts the proper supervision was not maintained in my judgment in allowing the machine to operate without being closed and thus making it highly dangerous to any children that would enter the laundry room. That the claimant in question did enter the laundry room under the circumstances shown in the record was or ought to have been anticipated by the authorities in charge and as the record further shows, they have since endeavored to remedy this condition by keeping the door to the laundry locked and boys arc now only allowed there when in charge of or under the supervision of one of the matrons or older employees.
The dangerous instrumentality of the spinner or machine in question is made manifest by the absolutely undisputed fact that although the power of the motor was no longer furnished by the electric current yet the uncovered and unguarded machine had power enough and sufficient to inflict this deplorable injury on a child of thirteen years of age. I am also of the opinion, as the facts reveal and as the claimant’s personal appearance before the court will show, that while he was thirteen years of age, and therefore under the age with which he could be charged with contributory negligence so far as the legal rule was involved, yet, his mental development had been considerably retarded and was but that of a child of nine or ten years of age. These facts were or should have been known by those in charge of the institution.
The superintendent in charge at the time of the accident had been at the institution but a few days previous thereto and perhaps had not had time to fully acquaint himself with the various situations presented nor the hazard present in the using of the machine in question. He seems to have done what was necessary as a precautionary measure after the accident occurred; *107 but frankly admits that so far as he was able to learn and know no precautions were taken before the accident (record p. 35.)
In Rine v. Morris et al, 127 S. E. 908; 99 W. Va. 52, Judge Hatcher in the opinion says:
"Where the defendants negligently leave exposed in a public place, unsecured, unguarded, and unattended, a dangerous machine, likely to attract children, excite their curiosity, and lead to their injury, while they are pursuing their childish instincts, a child of tender years, injured by said machine while meddling with it, is entitled to recover damages for the injury inflicted.” (Italics ours).
Surely, the reasoning of Judge Hatcher in the case just referred to, has a most significant application to the facts presented by claimant.
The further question is presented by the supplemental opinion filed by Judge Kunst in which he agrees with the conclusion as set forth in the majority opinion, but concludes that the act creating the court, sec. H, art. 2, of chan. 14, code, denies that the court has any jurisdiction to hear and try a claim arising out of the care and treatment of a person in a state institution.
I frankly admit that this provision is vague and indefinite as to whether or not it includes state institutions of every kind and description. If it does, then a student at the state university or any other state school who pays his tuition as well as room and board in case he occupies one of the dormitories, would be barred from presenting a claim to this court for injuries sustained while such student; and no matter how meritorious his claim may be or how extreme the negligence on the part of those in charge of the institution where the student had been injured, yet he would be denied the right to have his claim heard in this court on jurisdictional grounds. I cannot conceive that the Legislature intended such construction to be placed on the provision in question. I am of the opinion that it refers to penal and such other institutions in which the state is called upon to give aid and assistance, medical *108 and otherwise, and in which the state could not be held liable for the treatment of inmates by any in charge of the institution either through a mistake in the matter of treatment such as could easily happen in a state insane hospital or asylum or by the conduct of the guards or employees toward an inmate in any such institutions.
I would give to this provision a more liberal interpretation and would hold that in our state institutions and state schools, as well as where the state is charged with the duty of making and molding the lives of children and growing boys and girls into good citizens, that the duty of reasonable and ordinary care in their protection devolves upon the state under the circumstances and that the state should be liable when any of its officers or officials in charge are guilty of negligence and any of the students or inmates without fault, are injured thereby. I trust that at the next session of the Legislature this paricular provision will be clarified and the jurisdiction of this court in this respect definitely defined. For the reasons set forth, I dissent and would favor an award.